UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL BOTSFORD,

DECISION AND ORDER

18-CV-6911L

               Plaintiff,

      v.

ANDREW SAUL,
Commissioner of Social Security,

              Defendant.
_____


Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the March 2, 2015, plaintiff, then forty-nine years old, filed applications for a period of disability and disability insurance benefits, and Supplemental Security Income, alleging an inability to work since January 1, 2012 (later amended to March 2, 2015). (Administrative Transcript, Dkt. #9 at 16). His applications were initially denied, and plaintiff requested a hearing. Two video hearings were subsequently held before Administrative Law Judge ("ALJ") Roxanne Fuller, and on August 16, 2017, the ALJ issued a decision finding plaintiff not disabled. (Dkt. #9 at 16-33). That decision became the final decision of the Commissioner when the Appeals Council denied review on October 15, 2018. (Dkt. #9 at 1-4). Plaintiff now appeals.

The plaintiff has moved for remand of the matter for the calculation and payment of benefits, or in the alternative for further proceedings (Dkt. #11), and the Commissioner has cross moved (Dkt. #13) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the

reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records reflecting treatment for bipolar disorder, anxiety disorder, polysubstance abuse, and degenerative disc disease of the lumbar spine, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #9 at 19).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, with the following limitations: no more than occasional climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; no more than occasional balancing, stooping, crouching, kneeling or crawling; no more than occasional exposure to moving mechanical parts; no more than occasional operation of a motor vehicle; no more than occasional exposure to unprotected heights; able to perform routine and repetitive tasks; limited to low stress work, defined as having only occasional decision-making required and only occasional changes in the work setting; no interaction with the public, and no more than occasional interaction with coworkers and/or supervisors. (Dkt. #9 at 21-22).

When given this RFC as a hypothetical question at the second hearing, vocational expert Jessica Conners testified that such an individual would not be able to perform plaintiff's past relevant work as a carpet cleaner, but could perform the representative positions of small parts assembler, electronics worker and mail clerk.   (Dkt. #9 at 32).

Plaintiff's primary contention is that the ALJ erred when he declined to grant controlling weight to the opinion of plaintiff's treating psychiatrist, Dr. Robert Weisman ("Weisman"), who cosigned an opinion by plaintiff's treating therapist, licensed clinical social worker Raquel Martinez-Calleri ("Martinez-Calleri").[1]   The April 28, 2017 opinion was based on treatment commencing January 20, 2014, with therapy sessions every 2-4 weeks and medication adjustments every 4-12 weeks.   It noted plaintiff's diagnoses of anxiety, personality disorder and alcohol dependence in remission, and stated that "[w]hen symptomatic, patient has presented repeated psychotic symptoms in addition to auditory and visual hallucinations . . . He has been sober for several years, but residual symptoms and severe generalized anxiety significantly limit his functioning."   (Dkt. #9 at 870).   The opinion indicates that in addition to several "moderate" limitations, plaintiff has "marked" limitations with respect to understanding and responding to social cues, interacting with others without argumentativeness or irritability, completing tasks in a timely manner, and working in coordination or proximity to others, and "extreme" limitations in this ability to respond appropriately to others, cooperate and handle conflict with others, and get along with coworkers.   The opinion further estimated that although plaintiff has no difficulty performing activities of daily living, plaintiff would be late and/or absent from work more than four days per month.   (Dkt. #9 at 870-75).

---

[1]  The record contains no progress notes or other records authored by Dr. Weisman.   It is unclear whether, or to what extent, plaintiff had any ongoing treatment relationship with Dr. Weisman sufficient to render him a treating physician for purposes of the rule.   Nonetheless, because the Court finds that the ALJ furnished good reasons for the weight given to Dr. Weisman's opinion, resolution of whether he was, in fact, properly considered as a treating physician is unnecessary.

It is well-settled that "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §404.1527(d)[2].

Further, the ALJ must articulate his reasons for assigning the weight that he does accord to a treating physician's opinion. *See Shaw*, 221 F.3d at 134. *See also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). An ALJ's failure to apply the treating physician rule factors and give good reasons for declining to grant controlling weight is typically reversible error. *Id.*, 177 F.3d 128 at 134. "If, however, 'a searching review of the record' assures [the Court] that the substance of the treating physician rule was not traversed,'" and the record otherwise provides "good reasons" for the weight given to the treating physician's opinion, affirmance may be appropriate. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Here, while the ALJ acknowledged that Dr. Weisman was a treating mental health provider, the ALJ did not explicitly mention the treating physician rule or discuss the relevant factors in detail. Nonetheless, the ALJ set forth several "good reasons" for her decision to grant the opinion "little" weight. Initially, the ALJ noted that the limitations indicated in the opinion with respect to interaction with others were not supported by the record, given that when the plaintiff presented for therapy appointments, he often exhibited a normal, neutral mood with a full

---

[2] Changes to the Administration's regulations regarding the consideration of opinion evidence eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. For the purposes of this appeal, however, the prior version of the regulation applies.

range of affect. He also consistently denied aggressive behavior, and showed intact judgment and good impulse control. Per a May 16, 2016 progress note by Ms. Martinez-Calleri: "[plaintiff] reports maintained psychiatric stability and baseline functioning since our last session. At baseline [he] experiences mild to moderate feelings of anxiety and occasionally mild feelings of depressed mood." (Dkt. #9 at 718). On July 12, 2016, Ms. Martine-Calleri again described plaintiff's baseline as "mild to moderate feelings of anxiety and occasionally mild feelings of depressed mood," and noted that "[h]e infrequently experienced depersonalization/dissociative episodes but these brief episodes would usually self resolve within an hour or two." (Dkt. #9 at 729). With respect to plaintiff's ability to complete tasks and work with others without being unduly distracted, the ALJ noted that the "marked" limitations opined by Dr. Weisman were inconsistent with consistent examination findings of intact thought processes, normal concentration, and intact memory. (Dkt. #9 at 682, 690, 693, 697, 703, 739, 742, 749, 756, 860). Although Dr Weisman had found that plaintiff has marked limitations in changing activities or work setting, and would be late or absent more than four days per month, the ALJ cited to plaintiff's statements that his intrusive and dissociative episodes are mild-to-moderate, brief and infrequent, and noted that he has demonstrated no difficulty attending regular psychotherapy sessions, attending an outpatient chemical dependency program, and managing his medications.

Plaintiff argues that in citing evidence that contradicted Dr. Weisman's opinion, the ALJ cherry-picked the record. For example, at two treatment sessions in September and November 2015, plaintiff inconsistently described his intrusive or dissociative episodes as: lasting up to four hours and occurring less than once a month; and lasting up to six hours and occurring several times per month. (Dkt. #9 at 684, 691). Plaintiff also points to his hearing testimony that he's too depressed to leave his bed at least one day per week, spends an entire week in his room once every

few months, and on some occasions, has missed therapy appointments because he overslept or forgot about them.   (Dkt. #9 at 78, 85-88).

Federal courts reviewing social security decisions have long criticized "cherry picking" of evidence by ALJs – that is, selectively crediting evidence that supports the ALJ's conclusions while disregarding contradictory evidence from the same source.   *See Artinian v. Berryhill*, 2018 U.S. Dist. LEXIS 5988 at *20-*21 (E.D.N.Y. 2018) (collecting cases).   "'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both."   *Id*. (citing *Younes v. Colvin*, 2015 U.S. Dist. LEXIS 43471 (N.D.N.Y. 2015)).

Nonetheless, it is proper for the ALJ to only credit portions of medical source opinions, or to weigh different components differently, so long as the ALJ provides sound reasons for doing so. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).   *See also Fiorello v. Heckler*, 725 F.2d 1754, 176 (2d Cir. 1983), ("[a]lthough we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all the medical evidence in the claimant's favor") (internal citations omitted).

Here, the ALJ acknowledged that plaintiff had also had abnormal mental status examinations (for example, exhibiting a dysphoric, dysthymic, tearful mood and/or sad effect), but found that on balance, plaintiff's depressive symptoms were generally mild to moderate.   (Dkt. #9 at 20).   While the plaintiff did on two occasions describe more dramatic episodes of intrusive thoughts or dissociative episodes, the vast majority of his psychiatric treatment notes describe his intrusive/dissociative episodes as brief and occasional, and it was within the ALJ's purview to resolve such conflicts in the record.   Finally, the ALJ's decision not to credit plaintiff's testimony

concerning his difficulty in maintaining attendance – particularly in light of record evidence testifying to his regular attendance at substance abuse treatment and mental health therapy appointments, and plaintiff's testimony that he is able to engage independently in daily self-care – was not erroneous. (Dkt. #9 at 21).

In short, while a treating physician's opinion is entitled to controlling weight where it is "well supported by medical findings," the opinion by Dr. Weisman is lacking in such support given the overwhelmingly normal-to-moderate objective findings reflected in plaintiff's treatment notes. The reasons given by the ALJ for declining to afford the opinion controlling weight – including its inconsistency with the record as a whole – provided, however narrowly, a sufficient basis for giving the opinion "little" weight. Notwithstanding the ALJ's failure to explicitly apply the treating physician rule factors, the Court finds that the "substance of the treating physician rule was not traversed," and that the ALJ gave "good reasons" for declining to grant controlling weight to Dr. Weisman's opinion. *Halloran*, 362 F.3d at 32.

The Court also notes that the ALJ's mental RFC findings were otherwise supported by substantial evidence of record. Such evidence included the opinion of consulting psychologist Dr. Yu-Ying Lin, who examined plaintiff on June 1, 2015 and determined that plaintiff could follow and understand simple instructions, perform simple tasks independently, and learn new tasks. Dr. Lin found that due to "distractibility and substance abuse," plaintiff was moderately-to-markedly limited in dealing appropriately with stress, moderately limited in maintaining attention and concentration, performing tasks independently, and making appropriate decisions, and mildly limited in maintaining a regular schedule and relating adequately to others. (Dkt. #9 at 413-17). The ALJ gave Dr. Lin's opinion "partial" weight, finding that while the record supported "moderate" limitations with regard to stress, it did not demonstrate

"moderate-to-marked" stress-based limitations. The ALJ otherwise credited Dr. Lin's opinion, and incorporated limitations into her RFC finding to account for all of the other mental limitations Dr. Lin identified. (Dkt. #9 at 29-30).

In summary, I find that the weight given by the ALJ to the medical opinions of record was appropriate, and that the ALJ's decision is supported by substantial evidence, and is not the product of legal error.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #11) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 18, 2020.